UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PURUS PLASTICS GMBH, | CASE NO. C18-0277JLR |
| Petitioner, | ORDER DENYING MOTION TO DISMISS AND CONFIRMING FOREIGN ARBITRATION AWARDS |
| v. | |
| ECO-TERR DISTRIBUTING, INC., | |
| Respondent. | |

## I.    INTRODUCTION

Before the court is Respondent Eco-Terr Distributing, Inc.'s ("Eco-Terr") motion to dismiss.  (MTD (Dkt. # 8).)  Petitioner Purus Plastics GmbH ("Purus") opposes the motion and requests that the court confirm the foreign arbitration awards, enter judgment in Purus's favor, and award prejudgment interest and attorneys' fees.  (Resp. (Dkt. # 16).) The court has considered the parties' submissions in support of and in opposition to the

//

//

motion, the relevant portions of the record, and the applicable law.  Being fully advised,[1] the court denies the motion, confirms the arbitration awards, and grants in part and denies in part the request for interest and fees for the reasons set forth below.

## II.    BACKGROUND

This is an action to recognize and enforce two foreign arbitration awards ("the Awards") in Purus's favor.  (*See* Pet. (Dkt. # 1).)  Both parties sell plastic interlocking grid products, which are "used to reinforce and stabilize surfaces such as grass, gravel, and soil to improve the stability and drainage of those surfaces for humans, animals, and vehicles."[2]  (Baker Decl. (Dkt. # 10) ¶ 3.)  On August 9, 2008, the parties entered into a distributorship agreement ("the Agreement").  (Pet. ¶ 7; *see also* 1st Helkenberg Decl. (Dkt. # 1-1) ¶ 3, Ex. A ("Agreement").)[3]

Pursuant to the Agreement, Purus transferred "distribution of the flooring system ECOGRID ('the Product')" to Eco-Terr, which assumed a duty to "actively promote

---

[1] Eco-Terr requests oral argument (MTD at 1), but the court determines that oral argument would not be helpful to its disposition of the motion, Local Rules W.D. Wash. LCR 7(b)(4).

[2] Both parties provide extensive factual information.  Unless directly applicable to one of the seven grounds for declining to recognize and enforce a foreign arbitration award, *see infra* § III.B, the court recounts the facts only to provide background information, *see Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007) ("Confirmation under the Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm.").

[3] The Agreement was executed in German.  (*See* 1st Helkenberg Decl. ¶ 3.)  The parties also prepared a "Convenience Translation" version of the Agreement, which translates the Agreement into English.  (*See id.*)  Because neither party the English translation, the court cites that version.  (*See generally* MTD; Resp.; Reply (Dkt. # 19).)

distribution of the Product and to use its best efforts to safeguard the interests of [P]urus."
(Agreement § A.1.)  The Agreement extended to Eco-Terr's distribution efforts in
Canada and the United States.  (*Id.* § A.2.)  The Agreement further granted Eco-Terr the
exclusive right to distribute the Product under the designations HOOFGRID,
STABILIGRID, and HOMEGRID.  (*Id.* § H.6.)

Within six months of executing the Agreement, Eco-Terr was required to "apply
for registration of the designations HOOFGRID, STABILIGRID[,] and HOMEGRID as
trademarks solely for the Product (the 'Trademarks') with the United States Patent and
Trademark Office ["the USPTO"] and with the Canadian Intellectual Property Office."
(*Id.* § H.7.)  Eco-Terr was to "take all necessary steps to have the Trademarks registered
to it without undue delay and bear any costs related to the registration."  (*Id.*)  The
Agreement provided that Eco-Terr would transfer the Trademarks to Purus effective from
the expiration date of the Agreement.  (*Id.* § H.8.)  Eco-Terr, however, did not register the
Trademarks while the Agreement was in effect.  (*See* Pet. ¶ 13.)

The Agreement also contained an arbitration clause.  (*See* Agreement § N.5.)  That
clause specified that the parties would first attempt to resolve any "differences of opinion
over the performance or termination of this Agreement" by mediation.  (*Id.*)  But the
Agreement further provided that if the parties could not reach a resolution through
mediation, they could "require that arbitration proceedings be instituted—to the exclusion
of ordinary courts—on the basis of the rules of arbitration for the standing arbitral
tribunal of the Nuremberg Chamber of Industry and Commerce for Central Franconia."
(*Id.*)  The arbitral tribunal's decision would be "final and binding."  (*Id.*)

On June 22, 2011, Purus informed Eco-Terr that Purus intended to terminate the Agreement on December 31, 2011.  (Pet. ¶ 14; *see also* Christian Decl. (Dkt. # 9) ¶ 10.)  The day after the Agreement terminated, Eco-Terr filed applications with the USPTO for the HOOFGRID and STABILIGRID marks.  (Pet. ¶ 15.)  In January 2012, Purus first learned of Eco-Terr's attempts to register the marks.  (*Id.* ¶ 18.)  The United States registration of the HOOFGRID mark became effective on December 11, 2012, followed by the United States registration of the STABILIGRID mark on January 1, 2013.  (*Id.* ¶ 16; *see also* Christian Decl. ¶¶ 11-15.)  Eco-Terr's registration of those marks with the Canadian Trademark Office became effective on February 5, 2013.  (Pet. ¶ 17.)  Purus demanded that Eco-Terr transfer the marks as called for by the Agreement, and when Eco-Terr refused, Purus filed an arbitration action.  (*Id.* ¶¶ 18-19.)

The arbitration commenced on May 7, 2013, with Purus's submission of an arbitration statement.  (*Id.* ¶ 19.)  A three-member arbitral panel in Nuremberg, Germany presided over the arbitration (*id.* ¶ 21), and issued the first award on September 8, 2015 (*id.* ¶ 22).  The unanimous panel (1) ordered Eco-Terr to transfer the United States and Canadian trademarks to Purus; (2) enjoined Eco-Terr from further using those marks in the United States and Canada; (3) ordered Eco-Terr to turn over to Purus "information regarding the sales and distribution channels of the subject products"; (4) ordered Eco-Terr to pay compensatory damages of €20,000.00; (5) ordered Eco-Terr to compensate Purus for all past and future damages arising from its failure to register the marks pursuant to the Agreement and its use of the marks; and (6) ordered Eco-Terr to reimburse Purus for its arbitration costs.  (*Id.* ¶ 23; *see also* Christian Decl. ¶ 19, Ex. 12

("9/8/15 Award").) On October 24, 2015, the panel issued a second award that detailed the amount Eco-Terr was to reimburse Purus for bringing the arbitral action. (Pet. ¶ 24; *see also* Christian Decl. ¶ 20, Ex. 13 ("10/14/15 Award").)

According to Purus, since the panel issued the Awards, Purus has "repeatedly demanded that Eco-Terr comply" with the terms of the Awards. (Pet. ¶ 25.) Specifically, Purus contends that on May 23, 2016, its counsel demanded compliance with the Awards and that Eco-Terr cease and desist from continuing to use the marks. (*Id.* ¶ 28.) Purus further contends that Eco-Terr continues to the use the marks in the United States and Canada. (*Id.* ¶ 29.)

On February 22, 2018, Purus filed a petition for recognition and enforcement of the Awards. (*See generally id.*) Eco-Terr moves to dismiss the petition, contending that certain exceptions in the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"), June 10, 1958, 21 U.N.T.S. 2517, permit the court to deny Purus's petition (*see* MTD). In response, Purus requests that the court deny Eco-Terr's motion, enter judgment confirming the Awards, and award Purus attorneys' fees and costs and post-award, prejudgment interest. (Resp. at 8, 28.) The court now addresses the petition and motion to dismiss.

//

//

//

//

//

# III.   ANALYSIS

## A.   Legal Standard[4]

The Convention governs the "recognition and enforcement" of foreign arbitration awards in United States courts.[5]  *See* 9 U.S.C. § 201.  "The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries."  *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974).

When a party seeks confirmation of an award under the Convention, the court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  *See* 9 U.S.C. § 207.  Those seven grounds are:

---

[4] Eco-Terr's motion to dismiss is not subject to the standards that typically apply to such motions under Federal Rule of Civil Procedure 12(b)(6) because Eco-Terr does not argue that Purus fails to state a claim.  *Cf.* Fed. R. Civ. P. 12(b)(6).  For that reason, the court does not recite those standards herein and considers the evidence the parties have submitted in support of their filings.

[5] In 1970 Congress ratified the Convention, a multilateral treaty providing for 'the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought.' Convention, art. I(1), 21 U.S.T. 2517.  Congress implemented the Convention by passing Chapter II of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208, which provides that '[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States.  The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.'  9 U.S.C. § 203.  *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1119-20 (9th Cir. 2002) (internal footnote omitted).

[1]  The parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

[2]  The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

[3]  The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

[4]  The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

[5]  The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made[; or] . . .

[6]  The subject matter of the difference is not capable of settlement by arbitration under the law of [the country where enforcement is sought]; or

[7]  The recognition or enforcement of the award would be contrary to the public policy of [the country where enforcement is sought].

*Admart AG v. Stephen & Mary Birch Found., Inc.*, 457 F.3d 302, 307-08 (3d Cir. 2006)

(internal quotation marks omitted).  The party defending against enforcement of the

award must prove one of the Convention's enumerated defenses, which the court

interprets narrowly. *Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 836 (9th Cir. 2010). The "burden is substantial because the public policy in favor of international arbitration is strong." *Id.*

"Under the Convention, a district court's role is limited—it must confirm the award unless one of the grounds for refusal specified in the Convention applies to the underlying award." *Admart AG*, 457 F.3d at 307; *see also Ministry of Def. of the Islamic Republic of Iran v. Gould, Inc.*, 969 F.3d 764, 770 (9th Cir. 1992). Accordingly, confirmation proceedings are necessarily "summary" in nature and are "not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." *Marker Volkl (Int'l) GmbH v. Epic Sports Int'l, Inc.*, 965 F. Supp. 2d 308, 311 (S.D.N.Y. 2013) (internal quotation marks omitted). The court does "not sit to hear claims of factual or legal error by an arbitrator in the same manner than an appeals court would review the decision of a lower court." *Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp. 2d 12, 20 (D.D.C. 2011) (internal quotation marks omitted).

**B.      Motion to Dismiss and Petition to Confirm**

Eco-Terr argues that five grounds support dismissing Purus's petition to confirm the Awards:  (1) the Awards deal with differences not contemplated by or falling within the terms of Purus's submission to arbitration and contain decisions beyond the scope of that submission; (2) the subject of the parties' difference could not be settled by arbitration under German law, (3) the arbitral procedure was not in accordance with the Agreement, (4) the Awards are not yet final binding on the parties, and (5) the court's

recognition and enforcement of the Awards would contravene the public policy of the United States. (*See* MTD at 9-10.) The court considers each of those grounds in turn, and if none of them support dismissal, the court must confirm the Awards. *See* 9 U.S.C. § 207.

1. Differences Not Contemplated by the Agreement to Arbitrate

Eco-Terr first argues that the arbitration involved differences not contemplated by the Agreement or falling within the terms of Purus's submission to arbitration. (*See* MTD at 10.) The crux of this defense is that a party may "attack an award predicated upon arbitration of subject matter not within the agreement to submit to arbitration." *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale De L'Industrie Du Papier (RAKTA)*, 508 F.2d 969, 976 (2d Cir. 1974).

Eco-Terr argues that because the Agreement terminated on December 31, 2011, the Awards are unenforceable because "the Parties' agreement to arbitrate disputes pertaining to the performance or termination of the Agreement only applied to events occurring during that contract period." (MTD at 11.) Eco-Terr provides no authority for that position. (*See generally id.* at 10-12.) But based on that contention, Eco-Terr argues that the Awards deal with differences not contemplated by the Agreement and contain decisions beyond the scope of the Agreement. (*See id.* at 11.)

Eco-Terr too narrowly views the Agreement's arbitration provision. The law presumes that arbitration clauses survive termination of the underlying contract for disputes arising under that contract. *See Litton Fin. Printing Div. v. Nat'l Labor Relations Bd.*, 501 U.S. 190, 205 (1991). If that were not the case, "a party could avoid

[its] contractual duty to arbitrate by simply waiting until the day after the contract expired to bring an action regarding a dispute that arose while the contract was in effect." *Milfort v. Comcast Cable Commc'ns Mgmt. LLC*, --- F. Supp. 3d ----, 2018 WL 2455012, at *3 (S.D. Fla. Apr. 9, 2018). Here, the arbitration clause stated that "[i]n the event that the parties have differences of opinion over the performance or termination of this Agreement, . . . any party may require that arbitration proceedings be instituted."[6] (Agreement § N.5.) Thus, Eco-Terr's contention that the parties' duty to arbitrate ended upon termination of the Agreement is without merit. (*See* MTD at 11.)

However, that conclusion does not end the inquiry because the duty to arbitrate continues only for disputes arising under the relevant contract. *See Litton*, 501 U.S. at 205. The court therefore looks to whether a particular claim falls within the scope of the arbitration clause. *See Aviation Alliance Ins. Risk Retention Grp., Inc. v. Polaris Enter. Grp.*, No. CV 17-35-M-DWM, 2017 WL 2799151, at *3 (D. Mont. June 27, 2017). The issue of the trademarks was before the arbitral panel. (*See* Agreement §§ H.7, H.8, N.5;

---

[6] Although the language of that provision suggests only that arbitration was permissible—not mandatory—that distinction makes no difference here. (*See* Agreement § N.5 (stating that the parties could require arbitration)); *see also Asus Comput. Int'l v. InterDigital, Inc.*, No. 15-cv-01716-BLF, 2015 WL 5186462, at *5 (N.D. Cal. Sept. 4, 2015) (stating that "even when an arbitration clause uses permissive language, the clause still [may] give[] rise to mandatory arbitration"). First, the way the provision is structured first mandates the parties to participate in mediation to settle any dispute, followed by recourse to arbitration if they are unable to resolve the dispute. (*See* Agreement § N.5.) Viewed in context, the arbitration provision is best read as mandatory after mediation occurs. (*See id.*); *The Casiano-Bel Air Homeowners Assoc. v. Phila. Indem. Ins.*, No. 2:16-cv-08549-SVW-SK, 2017 WL 3273654, at *4 (C.D. Cal. Feb. 22, 2017) (concluding that an arbitration clause was mandatory even though it used the word "may" because once a party opted to demand arbitration, the clause became mandatory). Second, the issue before the court is not whether the parties agreed to arbitrate. Rather, now that the parties have completed arbitration, the issue before the court is whether to confirm the Awards.

9/8/15 Award.)  The relevant contractual provision called for Eco-Terr to apply for registration of those marks with the USPTO and Canadian Intellectual Property Office within six months after the parties executed the Agreement.  (Agreement § H.7.)  In addition, the parties agreed that Eco-Terr would transfer the marks to Purus upon termination of the Agreement.  (*Id.* § H.8.)  Thus, because the arbitration centered on Eco-Terr's lack of compliance with those contractual provisions, the parties' dispute arose under the Agreement and therefore was subject to arbitration.

Eco-Terr's focus on the arbitral panel's consideration of trademark-related events that occurred after the Agreement ended is misplaced.  (*See* MTD at 11-12; *see also* Christian Decl. ¶ 4 (stating that "Eco-Terr presented the three arbitrators . . . with clear proof that at no time during the Agreement . . . were there ever goods bearing either the HOOFGRID or STABILIGRID trademark that could have been submitted to [the USPTO] or the Canadian Intellectual Property Office").)  Specifically, Eco-Terr takes issue with the panel's decision that Eco-Terr's "2012 business efforts to design, manufacture, and offer for sale a new United States-made product . . . entitled Purus to obtain ownership of the trademarks and the sales channel data for the new United States-made product."  (MTD at 12.)  Eco-Terr further contests that the panel granted "Purus ownership of Eco-Terr's 'word' trademark registrations when the Agreement only addressed 'design' trademarks," and applied the Agreement to United States-made products.[7]  (*Id.*)  Eco-Terr essentially "attempt[s] to secure a reconstruction in this court

---

[7] In any event, it is not clear from the Agreement that it pertained only to design trademarks.  (*See* Agreement § H.7.)  The Agreement states that "[t]he design of the trademarks

of the contract—an activity wholly inconsistent with the deference due arbitral decisions on law and fact." *Parsons*, 508 F.2d at 976; (*see also* Christian Decl. ¶¶ 5 ("Each of the arguments raised in Eco-Terr's Motion to Dismiss . . . was raised in Eco-Terr's objections to the Arbitration Panel."), 6 ("The Arbitration Panel erroneously assumed that because Eco-Terr was entitled to apply for trademark registration in 2012, it was equally entitled to apply for trademark registrations . . . in 2008.").  Thus, the court inquires no further into the arbitral panel's decision and concludes that Eco-Terr fails to demonstrate this ground for refusing confirmation of the Awards.

### 2. Subject Matter Capable of Settlement by Arbitration

Eco-Terr next argues that the court should refuse to confirm the Awards because the trademark issues could not have been settled by arbitration under German law.  (*See* MTD at 12-13.)  This ground "authorizes a court to deny enforcement . . . of a foreign arbitral award when the subject matter of the difference is not capable of settlement by arbitration under the law of" the country where confirmation of the award is sought. *Parsons*, 508 F.2d at 974.  The provision "only covers disputes which under domestic law would be 'entrusted to the exclusive competence of the judiciary.'" *Changzhou AMEC E. Tools & Equip. Co., Ltd. v. E. Tools & Equip., Inc.*, No. EDCV 11-00354 VAP (DTBx), 2012 WL 3106620, at *10 (C.D. Cal. July 30, 2012) (quoting *Parsons*, 508 F.2d at 974).  Thus, a party contesting confirmation fails to establish this ground for relief

---

HOOFGRID, STABILIGRID[,] and HOMEGRID shall be adapted to the design of the trademarks ECORASTER and ECOGRID.  The design of the trademarks shal[l] require the prior written approval of [P]urus . . . ." (*Id.*)  On its face, that language does not necessarily demonstrate that Agreement's trademark provision extended only to design marks.  (*See id.*)

when "[t]here is no special national interest in judicial, rather than arbitral, resolution of the . . . claim underlying the award." *Parsons*, 508 F.2d at 975.

Eco-Terr argues the subject matter of the parties' dispute was not capable of settlement under German law and that the panel improperly "assigned German law to matters exclusively governed by United States and Canadian trademark laws."[8]  (MTD at 13.)  In support of this argument, Eco-Terr submits its letter to the panel asserting that the German Trademark Act does not apply to the Agreement.  (*Id.* (citing Christian Decl. ¶ 22, Ex. 15 at 1-2).)

As an initial matter, Eco-Terr misunderstands the defense.  (*See id.* at 13.) Although Eco-Terr focuses on whether the parties' dispute could be settled under German law, the defenses implicates the law of the country in which confirmation is sought— here, the United States.  *See Admart*, 457 F.3d at 308.  Article V of the Convention states that a court may refuse to confirm an arbitration award "if the competent authority in the country where recognition and enforcement is sought finds that . . . [t]he subject matter of the difference is not capable of settlement by arbitration under the law of that country." *Id.*  Thus, "that country" refers to the country in which the court asked to recognize the

//

---

[8] Eco-Terr's arguments in this regard rehash Eco-Terr's position that the panel could not address conduct occurring after the Agreement terminated.  (*See* MTD at 13 ("While it is true that the [p]arties selected German law to govern the Agreement, it is simply not the case that German law or the Agreement's arbitration provision applied to Eco-Terr's 2012 conduct or trademarks obtained after the Agreement was terminated in 2011.").)  In addition, Eco-Terr rests in part on its position that the arbitral panel incorrectly decided the issues.  (*See id.* at 14.)  Such arguments fail for the reasons discussed above.  *See supra* § III.B.1.

1   award sits.  *See id.*  Thus, Eco-Terr's arguments regarding German law are beside the

2   point.

3          Moreover, United States law does not require the judiciary to resolve contract

4   disputes involving trademark issues.  Rather, parties may agree to arbitrate those issues.

5   *Cf. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985)

6   (stating that the Federal Arbitration Act "provides no basis for disfavoring agreements to

7   arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability");

8   *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 725 (9th Cir. 2007) ("Contractual

9   arbitration agreements are equally applicable to statutory claims as to other types of

10  common law claims.").  Eco-Terr makes no showing otherwise by, for example,

11  demonstrating that Congress intended only for judicial resolution of trademark issues.

12  (*See* MTD at 13-14 (failing to address any congressional intent to exempt trademark

13  issues from arbitration)); *Lozano*, 504 F.3d at 725-26 (stating that the party asserting a

14  statutory claim may not be arbitrated has the burden of showing congressional intent to

15  that effect); *see also Mitsubishi*, 473 U.S. at 628 (stating that Congress must "evince[] an

16  intention to preclude waiver of judicial remedies for the statutory rights at issue").  The

17  fact that the parties' dispute is, at bottom, based on contractual provisions regarding

18  trademarks further supports concluding that the dispute need not be judicially resolved.

19         Eco-Terr also makes a number of ancillary arguments—none of which change the

20  court's conclusion.  First, Eco-Terr argues that the arbitral panel applied German

21  trademark law.  (*See* MTD at 13 (pointing to no specific portion of the panel's decision in

22  making that assertion).)  Even assuming that the arbitral panel should not have done so, it

does not appear that the panel in fact applied German *trademark* law. (*See* 9/8/15 Award at 21-28 (applying German law regarding contract construction).).

Second, Eco-Terr contends that "the Award is unenforceable as issued because it lacks full consideration of the practicality of complying with United States, Canadian, and German laws." (MTD at 14.) However, Eco-Terr's ability to comply with the Awards is not a valid reason to deny confirmation. *See TMCO Ltd. v. Green Light Energy Sols. R&D Corp.*, No. 4:17-cv-00997-KAW, 2017 WL 5450762, at *4 (N.D. Cal. Nov. 14, 2017) (stating that whether the party was able to perform in accordance with the final foreign arbitration award was irrelevant and not a basis for denying confirmation).

For those reasons, the court concludes that Eco-Terr fails to establish this defense.

3. <u>Arbitral Procedure in Accordance with the Parties' Agreement</u>

Eco-Terr next argues that the procedure the panel used contradicted the Agreement. (*See* MTD at 16.) The Convention provides a defense to enforcement when "the arbitral procedure was not in accordance with the agreement of the parties." *Admart*, 457 F.3d at 307-08. But the defense applies only if the asserted procedural violation "worked substantial prejudice to the complaining party." *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 190 F. Supp. 2d 936, 945 (S.D. Tex. 2011) (quoting *Compagnie des Bauxites de Guinee v. Hammermills*, No. 90-0169, 1992 WL 122712, at *5 (D.D.C. May 29, 1992)), *aff'd*, *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274 (5th Cir. 2004); *see also Calbex Mineral Ltd. v. ACC Res. Co., L.P.*, 90 F. Supp. 3d 442, 462 (W.D. Pa. 2015). The court examines the language of the arbitration agreement to

"determine whether the procedure used was contrary to the parties' agreed arbitral procedures." *Polimaster*, 623 F.3d at 836.

Eco-Terr argues that the defense applies because the arbitration panel conducted the proceedings in German rather than English. (*See* MTD at 16.) According to Eco-Terr, English should have been used because (1) the parties and the panel were fluent in English, and Eco-Terr was not fluent in German; and (2) the use of German contravened the "consistent course of conduct" between the parties. (*Id.*; *see also* Baker Decl. ¶ 15.) Eco-Terr further contends that using German instead of English amounts to a due process violation.[9] (*Id.* at 16-17.)

The court first addresses whether the parties agreed to arbitrate using the German language. Eco-Terr states that the Agreement does not specify which language would apply to an arbitration, and therefore contends that using German contradicts the Agreement. (*Id.* at 16 (citing Agreement §§ M-N).) Purus counters that the parties agreed to the rules of arbitration of the Nuremberg Chamber of Commerce, which incorporates the rules of the *Deutsche Institutionen für Schiedsgerichtsbarkeit e.V.* ("the DIS Rules"). (*See* Resp. at 24; 2d Helkenberg Decl. (Dkt. # 17) ¶ 6.) The DIS Rules allowed the panel to "determine the language or languages to be used in the

---

[9] In this regard, Eco-Terr essentially invokes a sixth ground for refusing to enforce the Awards under the Convention. *See Anatole Stati v. Republic of Kazakhstan*, --- F. Supp. 3d ----, 2018 WL 1461898, at *12 (D.D.C. Mar. 23, 2018) (stating that the Convention allows refusal of an award if "the party against whom the award is invoked was not given proper notice of . . . the arbitration proceeding or was otherwise unable to present [its] case" (quoting Convention, Article V(1)(b))); *see also Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 145-46 (2d Cir. 1992) (noting that Article V(1)(b) "essentially sanctions the application of the forum state's standards of due process").

proceedings." (Resp. at 24 (citing DIS Rules § 22); *see also* 2d Helkenberg Decl. ¶ 6, Ex. 2 (Dkt. # 17-2); *id.* ¶¶ 7 (stating the rule), 9-10.) Specifically, the DIS Rules specify that if the parties do not agree to the language to be used in the arbitral proceedings, "the arbitral tribunal shall determine the language . . . to be used in the proceedings." (2d Helkenberg Decl. ¶ 6, Ex. 2 §§ 22.1-22.2.) Because the parties' arbitration agreement was silent as to the language to be used, the DIS Rules filled that gap by allowing the panel to decide the language. (*See id.*; *see also* Agreement § N.5.) Thus, "the arbitral procedure" conformed to the Agreement. (*See* Agreement § N.5); *Polimaster*, 623 F.3d at 836.

Moreover, Eco-Terr demonstrates no prejudice arising from the panel's language decision. (*See* MTD at 16-17 (failing to discuss prejudice).) Eco-Terr again disputes the content of the Awards, but does not tie the outcome of the proceedings to the use of German as opposed to English. (*See id.*) Thus, Eco-Terr fails to demonstrate prejudice.

The court also addresses whether proceeding in German violated Eco-Terr's right to due process. (*See id.* at 16-17 (arguing that the use of German also violated Eco-Terr's right to due process).) To satisfy the requirements of due process, parties to an arbitration must be given notice of the proceedings and an opportunity to be heard. *See Gould*, 887 F.2d at 1365 ("The Convention contains several due process protections requiring notice and the opportunity to be heard as well as a defense to guard against enforcement of awards contrary to public policy."). When a party is unable to present its case in arbitration, there is a due process violation. *See Research & Dev. Ctr. "Teploenergetika," LLC v. EP Int'l, LLC*, 182 F. Supp. 3d 556, 565 (E.D. Va. 2016).

The court must deny confirmation of the award if the party challenging it "proves that [it] was not given a meaningful opportunity to be heard." *Id.* Eco-Terr, however, received such an opportunity.

Eco-Terr's due process argument centers on the fact that Eco-Terr "offered to provide English versions of all submissions to avoid translation errors," but "could never have known if its translated submissions were accurate or captured the intended meaning."[10] (MTD at 17 (citing Christian Decl. ¶¶ 7, 18).) In the immigration and criminal contexts, due process may be violated where a translation is "nonsensical" and "subject to doubt." *See Augustin v. Sava*, 735 F.2d 32, 38 (2d Cir. 1984); *see also Davila-Marquez v. City of Pasco*, No. C12-5059LRS, 2013 WL 1136658, at *3 (E.D. Wash. Mar. 18, 2013) (stating that federal courts "hold that the right to an interpreter affects a [criminal] defendant's Sixth Amendment right of confrontation and the right inherent in a fair trial to be present at one's own trial"); *cf. Hadjimehdigholi v. I.N.S.*, 49 F.3d 642, 649 (10th Cir. 1995) ("INS regulations also contemplate that proceedings and documents in a foreign language will be accurately translated."). Even if the same standard governed arbitration proceedings—and it is not clear that it does—Eco-Terr makes no showing that any translation was incorrect or that any purported inaccuracy

---

[10] Due process may be violated if a party does not receive notice of the arbitration proceedings in a language the party understands. *See Qingdao Free Trade Zone Genius Int'l Trading Co., Ltd. v. P & S Int'l, Inc.*, No. 08-1292-HU, 2009 WL 2997184, at *5 (D. Or. Sept. 16, 2009). However, Eco-Terr makes no argument that it did not receive an English-language notice of the proceedings. (*See generally* MTD; Christian Decl.) More importantly, Eco-Terr participated in the proceedings, thus demonstrating that it in fact received notice. *Cf. Qingdao*, 2009 WL 2997184, at *2 (stating that the party opposing enforcement of the foreign arbitration award did not appear at the arbitration proceedings).

adversely affected Eco-Terr.  Indeed, it appears from Eco-Terr's phrasing that Eco-Terr takes umbrage with its own translated submissions, over which it had control.  (*See* MTD at 17.)  In any event, Eco-Terr fails to show any errors or that, even if errors were present, they amount to a due process violation in a private arbitration proceeding.

Thus, Eco-Terr fails to show that the arbitration procedure was inconsistent with the Agreement, and this defense provides no basis for denying confirmation.

### 4.  Whether the Award Is Final and Binding

Eco-Terr next argues that the Awards are not yet final and binding.  (MTD at 17.)  This defense applies when a party files an action to confirm or enforce an arbitral award before the award is final.  *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1100 (9th Cir. 2011).  The award is final when a party has no further recourse in the arbitration proceeding, such as to an appeals tribunal.  *Id.* (quoting *Fertilizer Corp. of India v. IDI Mgmt., Inc.*, 517 F. Supp. 948, 958 (S.D. Ohio 1981)).

Eco-Terr asserts that because the September 8, 2015, Award includes "an undefined monetary award of 'all damage, which has arisen or will arise in the future,'" the parties have no way to calculate that amount.  (MTD at 17.)  Yet Eco-Terr fails to show that it has further recourse to challenge the arbitration award and therefore, that the award is not yet final.  (*See id.*)  Indeed, Eco-Terr provides no information or argument at all on that point.  (*See id.*)  Rather, as with its other arguments, the crux of Eco-Terr's contention is that it simply disagrees with the panel.  (*See id.* (stating that "these damages are based upon hypothetical trademark registrations that were impossible in 2008 and

1  could only be calculated by pure speculation")).  Such disagreement is not a basis for

2  denying confirmation of the Awards pursuant to the Convention.

3    And to the extent an open-ended damages award is even relevant to this defense,

4  the Award here is not as uncertain as Eco-Terr makes it out to be.  The Award requires

5  Eco-Terr to "compensate" Purus a specific amount—€20,000.00—even as the Award

6  also requires reimbursement for damages that might arise in the future.  Thus, the Award

7  states an ascertainable amount that Eco-Terr must pay Purus.  (*See* 9/8/15 Award at 29.)

8    For those reasons, the Award is final and binding, and this ground provides no

9  basis for denying confirmation.

10   5.  <u>Public Policy Defense</u>

11   Finally, Eco-Terr contends that public policy considerations counsel against

12 confirming the award.  (*See* MTD at 18-21.)  The public policy defense "applies only

13 when confirmation or enforcement of a foreign arbitration award would violate the forum

14 state's most basic notions of morality and justice."  *Cubic Def.*, 665 F.3d at 1097 (internal

15 quotation marks omitted) (quoting *Parsons*, 508 F.2d at 974).  The defense is rarely

16 successful, *see Parsons*, 508 F.2d at 974, because "[t]o read the public policy defense as

17 a parochial device protective of national political interests would seriously undermine the

18 Convention's utility," *Cubic Def.*, 665 F.3d at 1099 (internal quotation marks omitted)

19 (quoting *Parsons*, 508 F.2d at 974).

20   In invoking the public policy exception, Eco-Terr simply rehashes its earlier

21 arguments:  (1) that the panel improperly decided the trademark issues, (2) misapplied

22 United States and Canadian trademark law, and (3) violated Eco-Terr's due process rights

by conducting the proceedings in German.  (*See* MTD at 18-21.)  The court rejects those arguments for the same reasons articulated above.  *See supra* §§ III.B.1-4.  In addition, the court rejects them for the independent reason that the panel's decision—even if based on a misapplication of law—does not violate the United States' "most basic notions of morality and justice."  *See Cubic Def.*, 665 F.3d at 1097.  Thus, this defense also fails.

Because the court concludes that Eco-Terr demonstrates none of the asserted bases for denying confirmation of the Awards, the court must confirm the Awards.  *See* 9 U.S.C. § 207; (*see also* MTD at 9 (stating that the court "must recognize and enforce" the Awards "unless Eco-Terr can prove that at least one of the . . . grounds for refusal exists").  Thus, the court denies Eco-Terr's motion to dismiss and confirms the Awards.

## C.     Post-Award, Prejudgment Interest and Attorneys' Fees

In addition to confirmation of the Awards, Purus seeks post-award, prejudgment interest and attorneys' fees.  (Resp. at 28-30.)  Eco-Terr opposes those requests.  (Reply at 11-12.)  Eco-Terr argues that because the arbitration panel did not award prejudgment interest, it is not available in this action.  (*Id.* at 11.)  Eco-Terr further argues that attorneys' fees are unwarranted because it "participated in every aspect of the arbitration" and has not acted in bad faith.  (*Id.* at 12.)

"[P]ost-award, prejudgment interest is available in an action to confirm an arbitration award under the . . . Convention."  *Cubic Def.*, 665 F.3d at 1102.  The purpose of awarding prejudgment interest is to compensate a party "for the loss of use of money due as damages from the time the claim accrues until judgment is entered."  *Schneider v. Cty. of San Diego*, 285 F.3d 784, 789 (9th Cir. 2002).  The decision whether to award

such interest "falls within the district court's discretion." *Cubic Def.*, 665 F.3d at 1103. The court must exercise that discretion, however, "consistent with the underlying arbitration award," and therefore may not award interest "when the arbitration tribunal has determined that such interest is not available." *Id.* Where an award is silent on whether a party may recover post-award interest, prejudgment interest is consistent with the award. *See Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 932 F. Supp. 2d 153, 164 (D.D.C. 2013) (citing *Cubic Def.*, 665 F.3d at 1103). Courts presume that post-award, prejudgment interest is "appropriate" absent a persuasive showing to the contrary. *See Al Maya Trading Establishment v. Global Export Mktg. Co., Ltd.*, No. 16-CV-2140 (RA), 2017 WL 1050123, at *5 (S.D.N.Y. Mar. 17, 2017); *Waterside Ocean Navigation Co. v. Int'l Navigation, Ltd.*, 737 F.2d 150, 154 (2d Cir. 1984) (noting a general presumption in favor of prejudgment interest). The Ninth Circuit generally uses "the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 . . . for fixing the rate of pre-judgment interest." *Asdale v. Int'l Game Tech.*, 763 F.3d 1089, 1093 (9th Cir. 2014); *see also W. Pac. Fisheries, Inc. v. SS President Grant*, 730 F.2d 1280, 1288 (9th Cir. 1984) (stating that using 28 U.S.C. § 1961(a) is appropriate "unless the trial judge finds, on substantial evidence, that the equities of the particular case require a different rate"); *ESCO Corp. v. Bradken Res. Pty Ltd.*, Civ. No. 10-788-AC, 2011 WL 1625815, at *23 (D. Or. Jan. 31, 2011) (stating that the rate of interest specified in 28 U.S.C. § 1961 applied in a case to confirm a foreign arbitration); 28 U.S.C. § 1961(a).

//

In addition, the court may award attorneys' fees "when the losing party has acted in bad faith, vexatiously, wantonly[,] or for oppressive reasons." *Cubic Def.*, 665 F.3d at 1104 (citing *Int'l Union of Petroleum & Indus. Workers v. W. Indus. Maint., Inc.*, 707 F.2d 425, 428 (9th Cir. 1983)). In the context of a petition to confirm a foreign arbitration award, the losing party's unjustified refusal to comply with the award may provide a basis for awarding attorneys' fees. *See id.*; *cf. Landmark Ventures, Inc. v. InSightec, Ltd.*, 63 F. Supp. 3d 343, 359 (S.D.N.Y. 2014) (concluding that "[t]his is not a case where [the petitioner] simply failed to abide by the Award" because the petitioner "attempted to vacate the Award").

Because much of Eco-Terr's motion attempts to relitigate issues before the arbitration panel, the court finds an award of prejudgment interest on the €20,000.00 award appropriate. *Cf. ESCO*, 2011 WL 1625815, at *24 (stating that to award prejudgment interest in that case would "discourage parties from asserting objectively reasonable grounds for vacatur"). However, neither party addresses an appropriate rate of prejudgment interest. (*See generally* Resp.; Reply.) The court thus applies the rate from 28 U.S.C. § 1961(a) to the €20,000.00 award from September 8, 2015, to the date of judgment. The court declines, however, to award attorneys' fees. Although Eco-Terr has failed to comply with the Awards despite the passage of nearly three years, Purus has not shown that Eco-Terr was unjustified in its refusal. *See Cubic Def.*, 665 F.3d at 1104. Indeed, Eco-Terr has contested the Awards both before the arbitration panel and here, indicating that it did not simply choose to disregard the Awards. *Cf. Landmark Ventures*, 63 F. Supp. 3d at 359. The fact that Purus petitioned the court to confirm the Awards is

not itself sufficient to show that Eco-Terr acted in bad faith or vexatiously.  (*See* Resp. at 29 (citing Reif Decl. (Dkt. # 1-1).)

## IV.    CONCLUSION

For the reasons set forth above, the court DENIES Eco-Terr's motion to dismiss (Dkt. # 8) and CONFIRMS the Awards (Dkt. # 1).  The court further GRANTS in part and DENIES in part Purus's request for post-award, prejudgment interest and attorneys' fees (Dkt. # 16).  Accordingly, the court AWARDS prejudgment interest on the arbitral award of €20,000.00, commencing on September 8, 2015, through the date of judgment. Such interest shall accrue at a rate equal to the federal post-judgment interest rate, *see* 28 U.S.C. § 1961(a), applicable for the calendar week preceding the date of judgment.

Dated this 21st day of June, 2018.

_____
JAMES L. ROBART
United States District Judge